## Richmond

ANDREW P. MILLER, ATTORNEY GENERAL OF VIRGINIA v. DAVID B. AYRES, JR., COMPTROLLER OF VIRGINIA.

August 30, 1973.

Record Nos. 8221 and 8222.

Present, All the Justices.

*William G. Broaddus, Assistant Attorney General (Andrew P. Miller, Attorney General; D. Patrick Lacy, Jr., Assistant Attorney General; Katherine L. Goolsby, Assistant Attorney General*, on brief), for petitioner.

*Francis C. Lee (McCaul, Grigsby & Pearsall*, on brief), for respondent.

*Amicus Curiae: A. E. Dick Howard*, on brief, for petitioner.

*Amici Curiae: Walter C. Wright; John M. Oakey, Jr.; McGuire, Woods & Battle*, on brief, for respondent.

CARRICO, J., delivered the opinion of the court.

This matter, a sequel to the case of *Miller* v. *Ayres*, 213 Va. 251, 191 S.E.2d 261 (1972), presents for our review a new effort on the part of the General Assembly to provide financial aid from public funds to students in institutions of higher education in Virginia.

In the first *Miller* case, we had before us the question of the validity of Chapters 18 and 19 of the Acts of Assembly of 1972. Those Acts would have provided financial aid in the form of grants or loans to students in public and nonsectarian private institutions of higher education in Virginia and in the form of loans only to students in those sectarian colleges not having as their primary purpose the furnishing of religious training or theological education. Both earlier Acts would have permitted repayment of a loan either in money or by making satisfactory academic progress during the school term for which the loan was received.

The earlier legislation was attacked upon the ground that it violated the Establishment of Religion Clause of the First Amendment to the Constitution of the United States. We upheld the legislation against that attack. 213 Va. at 264, 191 S.E.2d at 271.

The legislation was also attacked upon the ground that the financial aid provided for therein exceeded the limitations set forth in Section 11 of Article VIII of the Virginia Constitution and therefore violated Section 10 of Article VIII. We held that the legislation, in permitting repayment of financial aid by academic progress, actually provided for conditional grants or gifts and not loans. This, we said, exceeded the authority of Section 11 of Article VIII,[1] which permits only "loans" to students attending certain private institutions of higher education in the Commonwealth, both sectarian and nonsectarian. And, since the conditional grants or gifts could have been made to students in sectarian institutions, we held the legislation to be in violation of Section 10 of Article VIII[2] of our Constitution, which permits such type of financial aid only to students in public or nonsectarian private schools. 213 Va. at 268, 191 S.E.2d at 274.

Following our decision, the General Assembly enacted Chapters 2 and 106,[3] Acts of Assembly of 1973. Chapter 2 amends and re-enacts Code §§ 23-38.12, -38.13, -38.15, -38.16, -38.17, and -38.18,[4] which were first added to the Code by Chapter 18 of the Acts of 1972. Chapter 2 provides for a program of undergraduate tuition assistance in the form of loans to residents of Virginia who attend private, nonprofit institutions of collegiate education in the state which have as their primary purpose to provide collegiate or graduate education and not to provide religious training or theological education. Aid provided under Chapter 2 may be used only for undergraduate collegiate work in educational programs other than those providing religious training or theological education of an indoctrinating nature. Code § 23-38.16.

Chapter 106 repeals the Code sections enacted by Chapter 19 of the Acts of 1972 and adds Code §§ 23-38.45 through -38.53.[5] Chapter 106 provides for a program of undergraduate scholarship assistance, based in part upon need, to residents of Virginia in the form of

[1.] Section 11 of Article VIII appears in full in an appendix at the end of this opinion.

[2.] Section 10 of Article VIII appears in full in the appendix at the end of this opinion.

[3.] Chapter 24 was enacted upon the same subject matter as Chapter 106, but only the latter will be mentioned here because it alone was codified and the two chapters are almost identical.

[4.] These Code sections are parts of Chapter 4.1 of Title 23 of the Code. Chapter 4.1 appears in full in the appendix at the end of this opinion.

[5.] These Code sections comprise Chapter 4.4 of Title 23 of the Code. Chapter 4.4 appears in full in the appendix at the end of this opinion.

grants or loans to students who attend public institutions of higher education in the state. The Chapter also provides financial aid in the form of loans only to students who attend private, nonprofit colleges in Virginia, except those institutions which have as their primary purpose to provide religious training or theological education. Grants or loans awarded under Chapter 106 may be used only for payment of tuition, fees, room, board, or other educational expenses which the recipient is obligated to pay during the academic year for which the award is made. Code § 23-38.50. Grants or loans made to students attending public institutions shall be upon such terms and conditions as the administering authority deems appropriate. Code § 23-38.49(a).

Both new chapters provide that loans made to students attending private institutions may be repaid either in money or, for each successfully completed academic year in which a loan is received, "by actions beneficial to, or of service to, the Commonwealth." Code §§ 23-38.15(a) and -38.49(b). Where repayment is made by actions beneficial to, or of service to, the Commonwealth, it may be in the form of one or more of the following:

1. Residence and domicile in Virginia and employment by the Commonwealth or any of its political subdivisions. One year of service repays one year of loan;

2. Residence and domicile in Virginia and employment by an organization or activity operated exclusively for religious, charitable, scientific, literary, or educational purposes or for testing for public safety or for the prevention of cruelty to children or animals. One year of service repays one year of loan;

3. Residence and domicile in Virginia and gainful employment in or out of the state in activity other than as set forth in paragraphs 1 and 2 above. Service for one and one-half years repays one year of loan;

4. Residence and domicile in Virginia. A period of two years of residence and domicile repays one year of loan;

5. Active duty in the armed services of the United States. One year of service repays one year of loan.

Both financial aid programs under review are to be administered by the State Council of Higher Education. Both were funded by appropriations approved by the General Assembly. Chapter 464, Item 513.1, Acts of Assembly of 1973. The Comptroller expressed doubt

concerning the constitutionality of the new legislation. Accordingly, he notified the Attorney General that he would refuse to honor vouchers from the State Council of Higher Education and, until this court adjudicated the validity of the legislation, would not issue warrants for payment thereof out of the appropriations made by the General Assembly. The Attorney General then filed the present petitions[6] for writs of mandamus requiring the Comptroller to issue warrants for payment of amounts authorized by the legislation. Code § 8-714.

As in the first *Miller* case, the Comptroller contends that the legislation under review is invalid because the loans provided for therein exceed the limitations of Section 11 of Article VIII of the Virginia Constitution and are, therefore, violative of Section 10 of Article VIII. And, as in the first *Miller* case, the Comptroller contends that the legislation is unconstitutional because it is in violation of the Establishment of Religion Clause of the First Amendment to the Constitution of the United States. A new contention of the Comptroller in this case is that the legislation also violates the Free Exercise of Religion Clause of the First Amendment.

## I

### *The Virginia Constitutional Questions*

The Comptroller contends that Chapters 2 and 106 of the Acts of Assembly of 1973 provide, just as the 1972 legislation provided, for conditional grants or gifts not contemplated by Section 11 of Article VIII of the Virginia Constitution, which permits only loans. Therefore, the Comptroller concludes, insofar as the new chapters permit such conditional grants or gifts to be made to students in sectarian institutions, they are violative of Section 10 of Article VIII, which permits such type of aid only to students in public and nonsectarian private institutions. The Comptroller argues that the five alternative methods of repayment set forth in Chapters 2 and 106 differ in no way from the method of repayment set forth in the earlier legislation, *viz.*, satisfactory academic progress, which we struck down in the first *Miller* case.

The Attorney General contends, on the other hand, that the Report of the Commission on Constitutional Revision, the subsequent legis-

---

6. The petition in Record No. 8221 applies to Chapter 106 of the Acts of Assembly of 1973 and that in Record No. 8222 to Chapter 2.

lative action of the General Assembly, and the opinion of this court in the first *Miller* case, recognize that loans made under the authority of Section 11 of Article VIII may be repayable other than in money. This being so, the Attorney General argues, the legislation under review must be found constitutional if the methods of repayment set forth therein provide for the giving of any consideration recognizable in the law of contracts, that is, a benefit to the Commonwealth or a detriment to the recipient of a loan.

The Attorney General insists that each of the five methods of repayment provides sufficient consideration in that each secures to the Commonwealth meaningful benefits and imposes upon the recipient significant restrictions which constitute legal detriments. And in an amicus curiae brief filed by the Council of Independent Colleges in Virginia in support of the Attorney General's position, it is stated that how "valuable the recipient's service or benefit is—how much it is worth to the Commonwealth—is . . . a matter to be decided not by a court, but by the General Assembly."

We accept the Attorney General's premise that a loan made pursuant to the authority of Section 11 of Article VIII need not be' repayable only in money, but may be repayable in some other manner. And we might agree that if the case could be decided upon simple principles of contract law, the General Assembly's pronouncement of what is sufficient consideration for such a loan would be controlling. However, we do not think the case can be decided by reference to principles of contract law. The controlling question, in our opinion, is not whether sufficient consideration has been provided for but whether the General Assembly had, in the first instance, authority to provide that Section 11 loans could be repaid *upon the terms* set out in Chapters 2 and 106. We proceed to an examination of that question.

Section 11 of Article VIII authorizes the General Assembly to provide for *loans* to students attending certain nonprofit institutions of higher education in Virginia. If all we had before us was the stark word "loans," as used in Section 11, we would be forced to hold that any loan made pursuant thereto would have to be repayable in money. But we know that the Revisors of the Constitution, the electorate which approved it, and the General Assembly which put it into effect intended the word "loans" to have a meaning different from what it

denotes in the ordinary commercial transaction. The extent of that difference, however, is the crucial determination we must make.

We know the word "loans" was intended to convey something more than its usual meaning because in its Commentary upon Section 11 of Article VIII, the Commission on Constitutional Revision stated:

"The Commission does not propose any state appropriations to private colleges and universities. Its proposals are much more modest. In the first place, the proposed section would allow the Commonwealth to extend to students in private institutions, whether church-related or not, loan programs available to students in public or private nonsectarian colleges in Virginia. For example, students in church-related colleges could be made eligible for the State Teacher Scholarships given by the State Board of Education. *These loans, given to undergraduates preparing for teaching in the public school system, can be cancelled either by a specified period of teaching or by repayment.*" (Emphasis added.)

Thus, although we know that in revising the Constitution it was intended that loans made under the authority of Section 11 of Article VIII could be repayable other than in money, we also know that any different manner of repayment was intended to be confined within very narrow limits—the rendering of public service to the Commonwealth. We say this because the one example given, "teaching in the public school system," is an act of public service and the one different method of repayment cited, "a specified period of teaching," requires such public service.

It cannot be presumed that because approval was given the revised Constitution with the intention that one alternative method of repayment of loans would be permitted, other far different methods were also intended to be permitted. To the contrary, it must be presumed that approval was given in light of the "modest" proposals of the Commission on Constitutional Revision. Those proposals displayed the clear intent to limit the manner of repayment of loans to methods substantially following the given example of public service to the Commonwealth.

We hold, therefore, that in order for financial aid to be valid as a loan under Section 11 of Article VIII, it must be repayable either in money or by public service to the Commonwealth. Four of the five alternative methods of repayment set forth in the present legis-

lation, those numbered 2 through 5,[7] fail to meet this test. Mere residence in the state, either by itself or coupled with employment by the nonpublic employers permitted by the legislation, or active duty in the armed services of the United States, are not acts substantially following the example of public service to the Commonwealth contemplated by Section 11 of Article VIII.

To the extent that the legislation under review permits repayment of loans by methods 2 through 5, it must be held to provide for conditional grants or gifts in excess of the authority granted by Section 11 of Article VIII. And, since the conditional grants or gifts may, under the legislation, be made to students in sectarian institutions, they are, to that extent, violative of Section 10 of Article VIII, which limits such type of aid to students in public and nonsectarian private schools.

This does not mean, however, that the entire programs envisioned by Chapters 2 and 106 must fall. Each of the Chapters now before us contains a severability clause. This situation differs from the first *Miller* case, where only one of the Acts under consideration had such a clause. Here, with a severability clause in each Chapter, we can eliminate what is bad and salvage what is good.

We may salvage in three areas. First, method No. 1 set forth in Chapters 2 and 106, which method permits repayment of loans by employment by the Commonwealth or any of its political subdivisions, passes the test of Section 11 of Article VIII. This method substantially fits the pattern of public service contemplated by Section 11 as necessary to repay a loan other than in money. Therefore, we uphold Chapters 2 and 106 to the extent that they provide financial aid in the form of loans to students attending the eligible educational institutions defined therein, both sectarian and nonsectarian, such loans to be repayable only in money or by employment by the Commonwealth or any of its political subdivisions.

---

7. Methods 2 through 5 are:

2. Residence and domicile in Virginia and employment by an organization or activity operated exclusively for religious, charitable, scientific, literary, or educational purposes or for testing for public safety or for the prevention of cruelty to children or animals.

3. Residence and domicile in Virginia and gainful employment other than as set forth in method No. 2 or as an employee of the Commonwealth or any of its political subdivisions.

4. Residence and domicile in Virginia.

5. Active duty in the armed services of the United States.

Second, Section 10 of Article VIII permits financial aid, without restriction as to form, to students in public institutions. Thus, such aid may take the form of grants or loans. Therefore, we uphold Chapter 106 to the extent that it provides aid in such form to students in public institutions. The terms and conditions upon which the grants or loans are made shall be determined by the State Council of Higher Education. Code § 23-38.49(a).

Third, Section 10 of Article VIII also permits financial aid, without restriction as to form, to students in nonsectarian private schools. Thus, such aid may take the form of outright grants. It follows that such aid may also be in the form of conditional grants. While, as we have held, conditional grants are not loans within the meaning of Section 11 of Article VIII and are invalid under Section 10 when sought to be made to students in sectarian schools, such grants may, under the authority of Section 10, be made to students in nonsectarian schools. And there is nothing in Section 10 to prevent such grants from being made upon the condition that they be repaid either in money or by one or more of the five alternative methods set forth in Chapters 2 and 106. Therefore, we uphold Chapters 2 and 106 to the extent that they provide financial aid in the form of conditional grants, repayable in the manner specified therein, to students in nonsectarian private institutions.

## II

### The Federal Constitutional Questions

Since we approve in Part I of this opinion financial aid in the form of loans, repayable either in money or by public employment, to students in sectarian institutions, we must now consider the First Amendment questions raised by the Comptroller.

We held in the first *Miller* case, as has been noted, that the financial aid programs there under review did not violate the Establishment of Religion Clause of the First Amendment to the Constitution of the United States. The Comptroller, making the same Establishment of Religion contention he made before, asks us to "reappraise" our former holding and declare the present legislation invalid. If circumstances had not changed, we would decline the request to reappraise since the Comptroller's contention was so clearly rejected in the first case.

However, following our first *Miller* decision and, indeed, after we had heard argument of this matter, the Supreme Court of the United States handed down decisions in ten cases involving state programs of aid to private educational institutions. These new decisions require a reexamination of our earlier holding. We have had the benefit of supplemental briefs of counsel in this case concerning the question of the effect of the new decisions upon the issues here.

Of the four opinions written by the Supreme Court disposing of the ten cases, three involved state programs aiding private elementary and secondary schools. In *Levitt* v. *Committee for Public Education*, 93 Sup. Ct. 2814 (1973), the Court struck down as "an impermissible aid to religion" a New York statute which would have reimbursed private schools for the cost of state-mandated testing and record keeping.

In *Sloan* v. *Lemon*, 93 Sup. Ct. 2982 (1973), the Court declared unconstitutional Pennsylvania's "Parent Reimbursement Act for Nonpublic Education," which would have reimbursed parents for tuition paid for their children to attend the state's private elementary and secondary schools. The Court held that the Act violated "the constitutional mandate against the 'sponsorship' or 'financial support' of religion or religious institutions."

In *Committee for Public Education* v. *Nyquist*, 93 Sup. Ct. 2955 (1973), the Court invalidated a New York statute which would have (1) provided for direct grants to private elementary and secondary schools for maintenance and repair of facilities and equipment, (2) established a plan of reimbursement to low-income parents for tuition paid for children attending such schools, and (3) provided tax relief to higher-income parents with children attending such schools. The Court held that all three aspects of the legislation had "the impermissible effect of advancing religion."

The fourth case, *Hunt* v. *McNair*, 93 Sup. Ct. 2868 (1973), involved the South Carolina Educational Facilities Act, a program aiding institutions of higher education. The Act established an Educational Facilities Authority to assist institutions of higher education in the financing and construction of physical facilities through the issuance of revenue bonds. The bonds, payable solely from funds derived from the revenues of projects, were not to constitute a debt or a pledge of the faith and credit of the state. Likewise, the expenses of the Authority were to be paid from the revenues of projects.

No facilities so constructed could be used for sectarian instruction or religious worship.

At issue was a proposal for the Authority to finance construction of a project for the Baptist College at Charleston. Although the school's trustees were elected by the South Carolina Baptist Convention, approval of the Convention was required for certain financial transactions, and 60% of the student body was Baptist, there was no evidence that the school was pervasively sectarian. Further, it was shown that there were no religious qualifications for faculty membership or student admission.

The contractual arrangements between the Authority and the college gave the Authority the right to make inspections to determine whether any of the financed facilities were used for sectarian purposes. The contract terms also permitted the Authority, upon default by the college, to establish rules, charges, and fees for the use of the project.

The Supreme Court upheld the South Carolina legislation against an Establishment of Religion attack asserted by a taxpayer. Reverting to the guidelines it had established in *Lemon* v. *Kurtzman*, 403 U.S. 602 (1971), the Court held that the purpose of the legislation was secular; that the legislation did not have the primary effect of advancing or inhibiting religion; and that the legislation did not foster an excessive entanglement of government with religion.

Of particular significance to the issue before us, the Supreme Court in the *Hunt* case relied upon its earlier decision in *Tilton* v. *Richardson*, 403 U.S. 672 (1971), stating two important propositions. First, there is a pertinent difference between aid to church-related elementary and secondary schools on the one hand and aid to church-related institutions of higher education on the other. Second, the Establishment Clause does not prohibit all programs which in some manner aid institutions with religious affiliations or, as the Court put it another way, not all aid is forbidden because aid to one aspect of an institution frees it to spend its other resources on religious ends.

The *Tilton* case, upon which the Supreme Court relied, involved the federal Higher Education Facilities Act. The Act authorized grants and loans to institutions of higher education, both nonsectarian and sectarian, for the construction of physical facilities to be used only for secular education. The Supreme Court upheld the Act against a First Amendment attack.

The *Tilton* holding is important here because in the first *Miller* case we said that the decision was "wholly dispositive of the First Amendment question" then before us. Now, the question is whether the new Supreme Court decisions have proved us wrong in our view. We think not.

With the new decisions, the crucial difference between aid on the elementary-secondary level and aid on the college level remains intact. We relied in the first *Miller* case upon the Supreme Court's recognition of that difference, and we feel justified now in relying upon the Court's restatement of that difference in *Hunt*.

With the new decisions, the three-pronged test—secular purpose, primary effect, and degree of governmental entanglement—also remains intact. We upheld the legislation under consideration in the first *Miller* case after applying each prong of the test. We reach the same result with respect to the legislation under consideration here.

Our position with respect to Virginia's financial aid programs is buttressed by several considerations. In the three new decisions involving programs of state aid to private elementary and secondary schools, the Supreme Court stressed the highly parochial nature of many of the schools which would be benefited. It listed eight characteristics displaying the pervasiveness of religion in admission policies, curricula, student activities, and faculty appointments. However, under the Virginia legislation now before us, students in institutions of higher education which display those characteristics would be barred at the outset from participating in benefits. This is so because Section 11 of Article VIII of our Constitution and the legislation under review exclude from eligibility those institutions which have as their primary purpose to provide religious training or theological education.

In the *Hunt* case, the Supreme Court stated that the burden rests upon the party challenging a state program of aid "to show the extent to which the College is church-related." And the Court held that "there is no evidence here to demonstrate that the College is any more an instrument of religious indoctrination than were the colleges and universities involved in *Tilton*."

Here, there is no evidence in the record of the extent of church relationship of the private institutions which would be eligible to have their students participate in benefits under the Virginia programs. We do have, however, the following statement in the Commentary of the Commission on Constitutional Revision upon Section 11 of Article VIII:

"Many of the private colleges in Virginia are church-related, but typically they operate like any other college. For example, of the twelve members of the Association of Independent Colleges (composed of nearly all of the accredited private non-profit four-year colleges in Virginia), nine have some degree of church relationship. Yet none of the nine ... imposes any religious tests for student admission or faculty selection, and none serves primarily a single religious faith. All, in short, are an integral part of Virginia's commitment to higher education, their doors open without discrimination to the youth of the Commonwealth."

The state programs of aid involved in this case are to be dispensed in a "college setting," as in *Tilton* and *Hunt*, rather than in elementary and secondary schools, and are confined to institutions having as their primary purpose to provide secular and not sectarian education. Therefore, we affirm the view expressed in the first *Miller* case and reject the Comptroller's contention that the programs violate the Establishment of Religion Clause of the First Amendment.

■ This brings us to the Comptroller's further contention that the legislation under review violates the Free Exercise of Religion Clause of the First Amendment. This contention is answered directly by *Tilton* v. *Richardson, supra,* where the same attack was made upon the Higher Education Facilities Act there being considered. In rejecting the contention of the appellant taxpayers that the Free Exercise Clause was violated because they were compelled to pay taxes which in part financed grants under the Act, the Court stated:

"Appellants, however, are unable to identify any coercion directed at the practice or exercise of their religious beliefs." 403 U.S. at 689.

■ Finally, the legislation now before us differs in one respect, so far as the First Amendment questions are concerned, from that under consideration in the first *Miller* case. Under Chapters 2 and 106 of the Acts of 1973, the recipient of a loan may make repayment by employment by a religious organization or activity. We raised the question with counsel whether this provision violated the Religion Clauses of the First Amendment. Since we approve in Part I of this opinion such method of repayment of financial aid in the form of conditional grants to students in nonsectarian schools, we must consider the question.

We believe the question is adequately answered in the supplemental brief of amicus curiae Council of Independent Colleges in Virginia, where *Walz* v. *Tax Commission*, 397 U.S. 664 (1970), is cited. *Walz* held that so long as a state does not single out a religious organization for special treatment, there is no violation of the First Amendment. In permitting repayment of financial aid by employment by religious organizations, the Virginia legislation has not specially favored such organizations in any respect. Instead, it has grouped them with charitable, scientific, literary, educational, and other organizations having worthy quasi-public purposes. So we find no violation of the First Amendment in this or any other aspect of the legislation under review.

### III

### *The Relief Awarded*

Writs of mandamus will be awarded directed to the Comptroller requiring him to issue warrants upon the State Treasury for the payment of such amounts as may be authorized by vouchers of the State Council of Higher Education for development and administration of the programs of financial aid authorized under the provisions of Chapters 2 and 106 of the Acts of Assembly of 1973, as limited by Part I of this opinion.

*Writs awarded.*

### APPENDIX

### *Constitution of Virginia, Art. VIII, §§ 10 and 11*

**Section 10. State appropriations prohibited to schools or institutions of learning not owned or exclusively controlled by the State or some subdivision thereof; exceptions to rule.**—No appropriation of public funds shall be made to any school or institution of learning not owned or exclusively controlled by the State or some political subdivision thereof; provided, first, that the General Assembly may, and the governing bodies of the several counties, cities and towns may, subject to such limitations as may be imposed by the General Assembly, appropriate funds for educational purposes which may be expended in furtherance of elementary, secondary, collegiate or graduate education of Virginia students in public and nonsectarian private scncols and institutions of learning, in addition to those owned or exclusively controlled by the State or any such county, city or town;

second, that the General Assembly may appropriate funds to an agency, or to a school or institution of learning owned or controlled by an agency created and established by two or more States under a joint agreement to which this State is a party for the purpose of providing educational facilities for the citizens of the several States joining in such agreement; third, that counties, cities, towns and districts may make appropriations to nonsectarian schools of manual, industrial or technical training and also to any school or institution of learning owned or exclusively controlled by such county, city, town or school district.

**Section 11. Aid to nonpublic higher education.**—The General Assembly may provide for loans to students attending non-profit institutions of higher education in the Commonwealth whose primary purpose is to provide collegiate or graduate education and not to provide religious training or theological education. The General Assembly may also provide for a State agency or authority to assist in borrowing money for construction of educational facilities at such institutions, provided that the Commonwealth shall not be liable for any debt created by such borrowing.

*Code of Virginia, Title 23, Chapters 4.1 and 4.4*

## CHAPTER 4.1

### Tuition Assistance Loan Act.

**§ 23-38.11. Short title.**—This chapter may be cited as the Tuition Assistance Loan Act. (1972, c. 18.)

**§ 23-38.12. Program of tuition assistance established.**—There is hereby established, from funds provided by law, a program of tuition assistance in the form of loans, as hereinafter provided, to bona fide residents of Virginia who attend private, accredited and nonprofit institutions of collegiate education in the Commonwealth whose primary purpose is to provide collegiate or graduate education and not to provide religious training or theological education. Unless otherwise indicated, as used in this chapter "accredited" means any institution approved to confer degrees pursuant to § 23-9 of the Code of Virginia. (1972, c.18; 1973, c.2.)

**§ 23-38.13. State Council of Higher Education designated as administering agency; power to define certain terms.**—The State Council of Higher Education is hereby designated as the administering agency for the program established by this chapter, and authorized to promulgate regulations consistent therewith and appropriate to the administration of the program. The administering agency shall have the power to define by regulation such terms as, but not limited to, "full-time undergraduate student," "successful academic year," "financial aid," "meritorious extenuating circumstances," and "incapacity" as used in this chapter. (1972, c. 18; 1973, c.2.)

**§ 23-38.14. Maximum amount of tuition assistance per student.**—The amount of tuition assistance, in the form of a loan pursuant to this chapter, which shall be available annually to a bona fide resident of Virginia attending a qualified private institution, as described in § 23-38.12, shall not exceed in amount the annual average appropriation per full-time equivalent student for the previous year from the general fund of the State treasury for operating costs at two and four year public institutions of collegiate education in Virginia. (1972, c.18.)

**§ 23-38.15. To whom loans made; how repaid; interest.**—(a) Under this program, loans shall be made to eligible Virginia residents for the academic year for which they enroll and are obligated to pay tuition as full-time undergraduate students at a qualified private institution, as described in § 23-38.12, and shall be repayable in money, or by actions beneficial to, or of service to, the Commonwealth as provided hereafter.

(b), (c) [Repealed.]

(c1) Where repayment is made in money it shall be in accordance with a schedule established by the administering agency, such schedule to provide that full payment will be made in an orderly fashion over a period of time commencing on the date the recipient ceases to be a full-time undergraduate student in the institution or becomes ineligible to repay in accordance with § 23-38.15 (c2) and extending over a period of years equal to twice the number of years for which tuition assistance was received, provided, however, that such period of time shall be extended by such number of years as the recipient may spend in additional full-time undergraduate or graduate study in a regionally accredited institution of higher education, such time of extension not to exceed six years.

(c2) Where repayment is made by actions beneficial to, or of service to, the Commonwealth, the recipient may make repayment for each successfully completed academic year in which a tuition loan was received by complying with any one of, or combination of, the following actions:

(1) Reside and be domiciled in Virginia and be employed by the Commonwealth of Virginia or any of its political subdivisions including all State and local agencies and authorities for a period of one year for each year a tuition assistance loan was received, provided that for teachers and those similarly situated employment for an academic year constitutes a full year;

(2) Reside and be domiciled in Virginia and be employed by an organization or activity, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office for a period of one year for each year a tuition assistance loan was received, provided that for teachers and those similarly situated employment for an academic year constitutes a full year;

(3) Reside and be domiciled in Virginia and be gainfully employed in or out of State other than as enumerated in § 23-38.15 (c1) [(c2)] (1) and (2) hereof for a period of one and one-half years for each year a tuition assistance loan was received, provided that for teachers and those similarly situated an academic year constitutes a full year;

(4) Reside and be domiciled in Virginia for a period of two years for each year a tuition assistance loan was received;

(5) Serve on active duty anywhere as a member of the armed services of the United States for a period of one year for each year a tuition loan was received.

(c3) When the recipient leaves the Commonwealth of Virginia to reside elsewhere, except for that reason for which extensions of time for a maximum period of six years is authorized in § 23-38.15 (c1), the balance of the loan or loans not previously repaid as authorized in § 23-38.15 (c2) above shall become due forthwith and

repayable in money in accordance with the schedule authorized in § 23-38.15 (c1) hereof.

(c4) Should a recipient of a tuition loan leave the institution for other than meritorious reason during the academic year for which the loan was granted, said loan for said year shall be due forthwith and repayable in money as required in § 23-38.15 (c1) hereof.

(d) Whether a recipient, who is compelled to withdraw from an institution during the academic year, in order to perform military service, or for other meritorious reasons, shall be obligated to repay the loan for said year in full or in part and whether by the method set forth in § 23-38.15 (c1) or (c2) hereof shall be determined by the administering agency on a basis consistent with the principles applied by the public institutions described in § 23-38.14 in making tuition refunds on comparable cases of withdrawal.

(e) Simple interest at three per centum per annum shall accrue on the unpaid balance of each tuition assistance loan from the date on which the recipient ceases to be a full-time, undergraduate student in the institution, provided, however, that no interest shall accrue during periods when the recipient is pursuing full-time undergraduate or graduate studies in a regionally accredited institution of higher education or is on active duty with the armed services of the United States as set forth in § 23-38.15 (c1) hereof. (1972, c.18; 1973, c.2.)

**§ 23-38.16. Duration of eligibility; loans to be used only for undergraduate work.**—A student's eligibility for tuition assistance under this program shall be limited to a total of four academic years. Tuition loans under this program shall be used only for undergraduate collegiate work in educational programs other than those providing religious training or theological education of an indoctrinating nature. (1972, c.18; 1973, c.2.)

**§ 23-38.17. Receipt by student of other financial aid.**—Tuition assistance received by a student under this program shall not be reduced by the receipt by such student of other financial aid from any source, provided, however, that in no case shall a student receive a loan pursuant to this chapter which when added to said other financial aid, would enable the student to receive total assistance in excess of the estimated cost to the student of attending the institution in which he is enrolled. (1972, c.18; 1973, c.2.)

§ 23-38.18. **Determination of bona fide residence.**—For the purposes of this chapter, whether a student is a "bona fide resident of Virginia" shall be determined by the administering agency on a basis consistent with the principles set forth in § 23-7 of the Code of Virginia. (1972, c.18; 1973, c.2.)

§ 23-38.19: Not set out. (This is a severability clause.)

## CHAPTER 4.4

### COLLEGE SCHOLARSHIP ASSISTANCE ACT.

§ 23-38.45. **Program created; to be administered by State Council of Higher Education.**—There is hereby created a scholarship assistance program to be administered by the State Council of Higher Education. The program shall consist of grants and loans to certain students attending public colleges in Virginia and of loans to certain students attending certain private colleges in Virginia. (1973, cc.24, 106.)

§ 23-38.46. **Council to develop program; what students eligible.**—(a) The State Council of Higher Education shall develop and administer a statewide program of financial aid to eligible undergraduate students at eligible institutions of higher education in Virginia. Such aid shall be made in the form of grants, or loans to students who wish to enroll, or are enrolled, at any accredited, degree-granting public institution of higher education in Virginia, and in the form of loans for students who wish to enroll, or are enrolled, in any accredited, degree-granting, private, non-profit, institution of higher education in Virginia, excepting those institutions whose primary purpose is to provide religious training or theological education.

(b) Only students who are bona fide domiciliaries of Virginia as defined by § 23-7 of the Code of Virginia and who are full-time, undergraduate students shall be eligible to receive such grants or loans.

(c) Grants or loans shall be made for one year, but may be renewed annually by the State Council of Higher Education for no more than three subsequent years of study in an undergraduate degree program. (1973, cc.24, 106.)

§ 23-38.47. **Criteria for making grants and loans.**—All grants and loans made pursuant to this chapter shall be based on such criteria as shall be established by the State Council of Higher Education, which criteria shall include the student's financial need. Need is defined as the difference between (i) the amount required to meet the student's actual cost of attendance at the institution of his choice, and (ii) the amount computed by the State Council of Higher Education to be available to such student from his own resources and those of his family for meeting such expenses. In determining the amount a student and his family can contribute to his education, the State Council of Higher Education shall take into consideration factors such as family income; any unusual circumstances or extraordinary expenses of the student or his family, including family size and number of students attending college; any assets which may be available to the student or his family to help defray the cost of his attendance; and any other nationally accepted criteria for determination of financial need. (1973, cc.24, 106.)

§ 23-38.48. **Amount of grants and loans.**—The State Council of Higher Education shall determine the amount of the grant or loan to be awarded each qualified applicant based on criteria established pursuant to § 23-38.47, but no grant or loan shall exceed one thousand dollars for each full-time academic year. (1973, cc.24, 106.)

§ 23-38.49. **Terms and conditions of grants and loans; repayment of loans; interest.**—(a) The State Council of Higher Education shall make grants and loans to eligible students attending public institutions in Virginia on the basis of such terms and conditions, not inconsistent with the provisions of this chapter, as the State Council of Higher Education deems appropriate.

(b) Loans made to eligible students attending eligible private institutions shall be repayable in money or by actions beneficial to or by service to the Commonwealth as provided hereafter.

(c) Where repayment is made in money pursuant to § 23-38.49 (b), it shall be in accordance with a schedule established by the State Council of Higher Education, such schedule to provide that full payment will be made in an orderly fashion over a period of time commencing on the date the recipient ceases to be a full-time, undergraduate student in the institution or becomes ineligible to repay in accordance with § 23-38.49 (d) and extending over a period of years

equal to twice the number of years for which the loan was received; provided, however, that such period of time shall be extended by such number of years as the recipient may spend in additional full-time, undergraduate or graduate study in a regionally accredited institution of higher education, such time of extension not to exceed six years.

(d) Where repayment is made by actions beneficial to, or of service to, the Commonwealth pursuant to § 23-38.49 (b), the recipient may make repayment for each successfully completed academic year in which a loan was received by complying with any one of, or combination of, the following actions:

(1) Reside and be domiciled in Virginia and be employed by the Commonwealth of Virginia or any of its political subdivisions including all State and local agencies and authorities for a period of one year for each year a loan was received, provided that for teachers and those similarly situated employment for an academic year constitutes a full year;

(2) Reside and be domiciled in Virginia and be employed by an organization or activity, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation, and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office for a period of one year for each year a tuition assistance loan was received, provided that for teachers and those similarly situated employment for an academic year constitutes a full year;

(3) Reside and be domiciled in Virginia and be gainfully employed in or out of State other than as enumerated in § 23-38.49 (d) (1) and (2) hereof for a period of one and one-half years for each year a tuition assistance loan was received, provided that for teachers and those similarly situated an academic year constitutes a full year;

(4) Reside and be domiciled in Virginia for a period of two years for each year a tuition assistance loan was received;

(5) Serve on active duty anywhere as a member of the armed services of the United States for a period of one year for each year a tuition loan was received.

(e) When the recipient leaves the Commonwealth of Virginia to reside elsewhere, except for that reason for which extensions of time for a maximum period of six years are authorized in § 23-38.49 (c), the balance of the loan or loans not previously repaid as authorized in § 23-38.49 (d) above shall become due forthwith and repayable in money in accordance with the schedule authorized in § 23-38.49 (c) hereof.

(f) Should a recipient of a loan leave the institution for other than meritorious reasons during the academic year for which the loan was granted, said loan for said year shall be due forthwith and repayable in money as required in § 23-38.49 (c) hereof.

(g) Whether a recipient, who is compelled to withdraw from an institution during the academic year, in order to perform military service, or for other meritorious reasons, shall be obligated to repay the loan for said year in full or in part and whether by the method set forth in § 23-38.49 (c) or (d) hereof shall be determined by the State Council of Higher Education on a basis consistent with the principles applied by the public institutions of higher education of the Commonwealth in making tuition refunds on comparable cases of withdrawal.

(h) Simple interest at three per centum per annum shall accrue on the unpaid balance of each loan from the date on which the recipient ceases to be a full-time, undergraduate student in the institution; provided, however, that no interest shall accrue during periods when the recipient is pursuing full-time, undergraduate or graduate studies in a regionally accredited institution of higher education. (1973, cc.24, 106.)

§ 23-38.50. **Use of grants and loans.**—The full amount of each grant or loan awarded to each applicant shall be used only for payment of charges for tuition, fees, room, board or other educational expenditures approved by the State Council of Higher Education which the applicant is obligated to pay for the academic year for which the grant or loan is awarded. (1973, cc.24, 106.)

§ 23-38.51. **Rules and regulations.**—The State Council of Higher Education shall promulgate such rules and regulations as it deems necessary to effectuate the program established by this chapter. (1973, cc.24, 106.)

§ **23-38.52. Employment of staff; acceptance of gifts.**—The State Council of Higher Education is authorized, subject to the provisions of chapter 10 (§ 2.1-110 et seq.) of Title 2.1 of the Code of Virginia, to employ such staff members as it may deem necessary to supervise and administer this program and is further authorized to accept and expend gifts and donations from public and private sources to enable it better to carry out this program and its objectives. (1973, cc. 24, 106.)

§ **23-38.53:** Not set out. (This is a severability clause.)